UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| METALWORKING LUBRICANTS COMPANY, | ) |
| Plaintiff, | ) |
| vs. | ) Cause No. 1:09-cv-520-WTL-JMS |
| SOMERSET ENERGY REFINING LLC, | ) |
| Defendant. | ) |

**ENTRY ON MOTION TO DISMISS**

This cause is before the Court on the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue or, in the alternative, for Transfer of Venue (Docket No. 8). The motion is fully briefed, and the Court, being duly advised, finds that it lacks personal jurisdiction over the Defendant and therefore **GRANTS** the motion to dismiss.

*Background Facts*

Plaintiff Metalworking Lubricants Company ("Metalworking") is a Michigan corporation with its principal place of business in Pontiac, Michigan. Metalworking also maintains a large facility in Indianapolis, Indiana. Defendant Somerset Energy Refining LLC ("Somerset") is a Kentucky corporation with its principal place of business located in Kentucky. Metalworking is an oil "re-refiner—it takes used oil, refines it, and adds virgin oil to make a finished product sold as cutting oil." Metalworking's Brief at 2. Somerset is an oil refiner.

Metalworking and Somerset entered an agreement on October 28, 2008, whereby

Metalworking would clean two of Somerset's oil storage tanks located in Somerset, Kentucky, transport any material recovered from the tanks to one of its facilities for reprocessing, and recycle the recovered waste material for resale. The resulting profits, if any, were to be split equally between the parties. Metalworking directed its Indianapolis-based resources to begin work on Somerset's tanks in April of 2009. After cleaning was completed, Metalworking transported the waste materials recovered from Somerset's tanks back to its facility in Indianapolis, Indiana. The parties dispute whether Metalworking's conduct after the material arrived in Indianapolis was consistent with the agreement. However, when Metalworking sought payment for the services it provided to Somerset at its Indianapolis facility, Somerset refused to pay. That refusal triggered the instant action.

Metalworking filed this diversity action on April 28, 2009, in the Southern District of Indiana, asserting that Somerset breached the parties' October 28, 2008 agreement. In the instant motion, Somerset argues that this Court lacks personal jurisdiction over it or, in the alternative, that the Southern District of Indiana is an improper venue. Somerset also seeks to recover its costs.

### *Facts Relevant to Personal Jurisdiction*

Somerset is a Kentucky corporation and has never maintained an office or owned any real property within Indiana. Metalworking, a Michigan corporation, enjoys extensive contact with Indiana; its largest facility in North America is located in Indianapolis and it maintains a sizeable work force here.

The negotiations leading up to the parties' October 28, 2008 agreement occurred telephonically between Metalworking's headquarters in Michigan and Somerset's headquarters

in Kentucky.  At no time did either party conduct negotiations within Indiana.  In October 2008, Somerset Vice President Jan C. Acrea travelled to Indianapolis and briefly visited Metalworking's facility, but no other Somerset employee entered Indiana over the course of the parties' relationship.

On October 29, 2008, an employee of Metalworking's Michigan headquarters, Dr. Robert Kainz, sent Somerset's Acrea a "modified time and materials proposal."  The parties appear to agree that this "proposal" sets forth their agreement.  Printed on Metalworking stationary and prominently announcing its origin in Pontiac, Michigan, the agreement states that "[Somerset Refining] assumes that Metalworking Lubricants will handle the disposition of all contents (including transportation, disposal, recycling etc.)." Compl. Ex. 1 at 2.  The agreement also lists—in its footer—the locations of Metalworking's facilities throughout the world.  *Id.*  Nothing in the body of the agreement, however, mentions Indiana, or Metalworking's Indianapolis facility.  *See id.*  The agreement also lacks a forum selection clause.  *See id.*

On reaching an agreement, Metalworking dispatched "an armada" of personnel and equipment from its Indianapolis facility to Somerset, Kentucky.  *See* Metalworking's Brief at 3.  As Metalworking cleaned the tanks, its employees prepared and had Somerset employees sign shipment invoices.  Metalworking's invoices state that the material recovered from Defendant's tanks was to be transported from Somerset, Kentucky to Indianapolis, Indiana.  Once the work in Kentucky was completed, Metalworking directed its armada to return to Indianapolis, Indiana.

*Discussion*

Somerset moves to dismiss this cause for lack of personal jurisdiction or, in the alternative, for improper venue. Somerset also seeks to recover the costs it incurred in filing this motion.

*Jurisdiction*

When a defendant challenges the Court's personal jurisdiction over it, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004). Where, as here, a motion to dismiss is resolved without an evidentiary hearing, the plaintiff's burden is satisfied if it makes a prima facie case of personal jurisdiction. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). "In evaluating whether the prima facie standard has been satisfied, the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.* (citations omitted).

This court's jurisdiction over non-resident defendants is coextensive with that of Indiana's state courts. *Hyatt Int'l Corp. V. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). As such, this court's ability to exercise personal jurisdiction involves two inquiries: first, whether the requirements of Indiana's long-arm statute are met; and, second, whether the defendant is amenable to suit in this court under the Due Process clause of the 14th Amendment. *Purdue Research*, 383 F.3d at 779. Indiana's long-arm statute is found in Indiana Trial Rule 4.4(a). Rule 4.4(a) authorizes Indiana's courts—and this court by extension—to exercise personal jurisdiction over non-residents "on any basis not inconsistent with the Constitutions of this state or the United States." *Anthem Ins. Cos. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227 (Ind.

2000).  Since Indiana's long-arm statute extends jurisdiction to its Constitutional limits, the Due Process clause forms the outer edge of this Court's personal jurisdiction over non-resident defendants.

Due process requires that a non-resident defendant have "certain minimum contacts with [Indiana] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457 (1940)).  These contacts arise from either the defendant's general activities within the forum or through the defendant's activities relating to the underlying litigation that are directed toward the forum.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984).   These two categories of personal jurisdiction are commonly known as "general" and "specific" jurisdiction.  *Id.* at 414 n.8, 415, n.9.

"[G]eneral jurisdiction allows a defendant to be sued in the forum regardless of the subject matter of the litigation." *Purdue*, 383 F.3d at 787.  The test for general jurisdiction is stringent and this Court may only exercise it if the plaintiff shows that the defendant has "continuous and systematic general business contacts" with the forum.  *Helicopteros*, 466 U.S. at 416.  In other words, Somerset's contacts with Indiana "must be so extensive to be tantamount to [Somerset] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in an Indiana court in any litigation arising out of any transaction or occurrence taking place anywhere in the world." *Purdue Research Found.*, 338 F.3d at 787.  Neither party argues that this Court has general jurisdiction over Somerset.  Nor should they; nothing in the record suggests that Somerset had any contacts with Indiana other than those giving rise to the instant litigation.

This Court exercises specific jurisdiction over a non-resident defendant when the basis of the suit "arises out of or is related to" the defendant's contacts with the forum state. *Jennings*, 383 F.3d at 549. "To establish specific jurisdiction under . . . minimum contacts analysis, a plaintiff must show that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state and that the exercise of personal jurisdiction over that defendant would comport with traditional notions of fair play and substantial justice." *Id.* (citations and internal quotations omitted). "The 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Furthermore, a plaintiff's "unilateral activity . . . is not an appropriate consideration when determining wether a defendant has sufficient contacts with a forum State to justify an assertion of [personal] jurisdiction." *Helicopteros*, 466 U.S. at 417.

The Court cannot exercise specific personal jurisdiction over Somerset because Metalworking fails to demonstrate how Somerset purposefully availed itself of the privileges of doing business within Indiana. Metalworking's evidence establishes that Somerset sought out a Michigan corporation's services to clean two oil storage tanks located in Kentucky. Nothing in the parties' agreement references Indiana; all it says, and all Somerset appears to have agreed to, is that Metalworking would utilize its resources (which are located in several states and two foreign countries) to clean Somerset's tanks, to transport any waste material, and to dispose of that waste. Stated another way, the agreement allowed Metalworking to independently select which of its several facilities would service the tanks and handle the material recovered therefrom. It was thus Metalworking, not Somerset, that chose to avail itself of Indiana-based resources to clean the tanks, transport material, and dispose of waste. Such unilateral action by a

plaintiff is insufficient to show that a defendant had minimum contacts with a forum. *Helicopteros*, 466 U.S. at 417. Accordingly, this Court does not have personal jurisdiction over Somerset and its motion to dismiss is **GRANTED** without prejudice. Because this is not a final judgment, Somerset's request for costs is denied as premature.

*Conclusion*

Metalworking has failed to satisfy its burden of demonstrating that Somerset's contacts with Indiana are sufficient to permit this Court to exercise personal jurisdiction over it in this case. Accordingly, Somerset's motion to dismiss for lack of personal jurisdiction is **GRANTED** and this case is dismissed without prejudice.

SO ORDERED:  10/27/2009

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Robert R. Clark
Taft, Stettinius & Hollister, LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204-2023
rclark@taftlaw.com

Joe L. Travis
Travis, Pruitt & Powers
207 E. Mt. Vernon Street
PO Drawer 30
Somerset, KY 42502-0030
sharon@travispruittpowerslaw.com